Myers and Sanford have appealed from an order granting a motion for summary judgment in favor of Protective. The opinion and decree of the trial court filed on March 1, 1976, succinctly summarizes the background of the appellants' claims for commissions on renewal premiums, which *Page 773 
they claim Protective should pay, as the reinsurer of the business of Empire Life Insurance Company of America. It is, therefore, reproduced here:
 "IN THE CIRCUIT COURT FOR THE TENTH JUDICIAL CIRCUIT OF ALABAMA EQUITY DIVISION
"STATE OF ALABAMA, EX REL. ) JOHN G. BOOKOUT, ) COMMISSIONER OF INSURANCE, ) )
Plaintiff, ) )
VS. ) CIVIL ACTION )
EMPIRE LIFE INSURANCE ) NO. 171-687 COMPANY OF AMERICA, AN ) ALABAMA CORPORATION, ) )
Defendant, ) )
and ) )
SHEARN MOODY, JR., ) )
Intervenor. )
 "MEMORANDUM OPINION AND DECREE
"On December 31, 1975, the complainant-intervenor, Protective Life Insurance Company, filed a cross-bill for declaratory judgment praying that this Court declare that Protective has no liability to the respondents-intervenors, Myers and Sanford, former agents of Empire Life Insurance Company, for renewal commissions on premiums collected and to be collected by Protective under former Empire policies which have been reinsured by Protective. Myers and Sanford filed a motion to dismiss. Protective then filed a motion for summary judgment supported by a lengthy affidavit containing sixteen documentary exhibits. Myers and Sanford did not submit any opposing documents, proof or brief whatsoever, and upon oral argument on the merits of Protective's motion, no fact was in any way contested by Myers and Sanford. The underlying facts are therefore completely undisputed and show the following:
"This Court placed Empire into receivership by order of this Court dated June 29, 1972.
"In October 1973, pursuant to the order of this Court, the Receiver for Empire solicited proposals for the reinsurance of all of the life insurance policies of Empire. In response to the solicitation, Protective filed a Treaty of Assumption and Bulk Reinsurance which offered to reinsure the Empire policies. This Treaty as initially submitted had been reviewed by the Empire Receiver and by the Insurance Commissioners of the States of Arkansas, Montana, Nebraska, Oklahoma and Texas, who unanimously recommended the Treaty as being in the best interests of the Empire policyholders. *Page 774 
"Thereafter, the Receiver petitioned this Court seeking the approval of the Treaty and authorization to enter into it and implement it. Myers and Sanford, as general agents of Empire, filed a motion to intervene and objections to the Treaty. They objected to the Treaty on the ground, among others, that it did not contain equitable provisions for the payment of creditors and agents of Empire. The motion to intervene was granted, and the objections of Myers and Sanford were treated as their answer to the Receiver's petition.
"The Treaty explicitly limits the liability of Protective with respect to commissions due agents of Empire. It provides that Protective would have no liability to agents of Empire, with certain exceptions not relevant here, as follows:
 "`F. Commissions. Protective agrees to assume Empire's liability with respect to any commission due for premiums collected by Empire before June 29, 1972, but only to the extent that such commission was included in the liabilities reported in the Annual Statement of Empire as of December 31, 1972 and reflected on Empire's books and records. It is expressly understood that Protective is not assuming any obligation for commissions not reflected on such Annual Statement or due on account of premiums collected after June 29, 1972 or to be collected in the future.
 "`G. . . . Protective does not assume any liability and shall have no liability for:
 * * * * * * "`6. Any obligation for commission[s] which may have been due on account of premiums collected or to be collected after June 29, 1972.'"
"Following the intervention by Myers and Sanford, this Court conducted a twelve-day plenary trial at which the Court allowed all evidence offered by any and all parties, including Myers and Sanford, relating directly or indirectly to whether Empire was insolvent or whether the Protective Treaty should be approved by the Court. Throughout this trial, intervenors Myers and Sanford were represented by counsel. Following this hearing, on June 14, 1974 this Court found that Empire was insolvent in excess of $6,000,000 and that further efforts at rehabilitation of Empire would be useless. The Court specifically approved the Protective reinsurance Treaty containing the language quoted above limiting Protective's liability to Empire's agents for commissions and ordered Empire liquidated. Myers and Sanford appealed to the Alabama Supreme Court. The appeal was dismissed by order of the Supreme Court on September 23, 1974.
"Following approval of the last amendment to the Treaty, Protective reinsured the Empire policies in accordance with the provisions of the Treaty as amended.
"Under the Treaty, the Receiver assigned to Protective all of Empire's policies and most of Empire's assets. The Receiver retained $2,000,000 for the payment of expenses and claims not assumed by Protective, such as those of agents like Myers and Sanford. The Treaty as consummated placed a 50% moratorium on policyholder cash values which means that policyholders may withdraw only 50% of the cash values they had built up under their policies. The Treaty contemplates a gradual reduction in the moratorium as premium income and income from Empire assets are applied to reduce the deficit between the reserve liability on the policies and the value of the assets transferred by the Empire Receiver to Protective. Under the Treaty, Protective guarantees the elimination of the moratorium in ten years.
"Pursuant to the provisions of the Alabama Uniform Insurers Liquidation Act, Title 28A, § 620 ff, Code of Alabama, both intervenors Myers and Sanford each filed Proofs of Claim with the Receiver in which they claimed renewal commissions due them or to become due them under their respective agency contracts with Empire. The Proofs of Claim raised the issue of whether Myers and Sanford were entitled to renewal commissions accruing subsequent to June 14, 1974, the date on which this Court ordered liquidation. This issue was specifically *Page 775 
briefed and argued by the respective parties. On June 13, 1975, this Court entered its order on said claims, declaring that:
 "`all rights to renewal commissions terminated on June 14, 1974 under the provisions of Title 28-A, § 645, Code of Alabama, as recompiled, 1958, which fixes the rights and liabilities of the insurer as of the date on which the order directing liquidation of the insurer is filed in the office of the clerk.'
"Though this order was appealable under Title 28A, § 638, neither Myers nor Sanford appealed.
"Myers and Sanford then filed separate actions against Protective in the United States District Court for the Northern District of Texas, seeking recovery of all commissions allegedly due under their agency contracts with Empire on premiums received by Protective on reinsured Empire policies, and shortly thereafter this action for declaratory judgment was filed by Protective.
"Notwithstanding the foregoing facts, Myers and Sanford insist, on the basis of their former contracts with Empire, that Protective is not entitled to judgment on its cross-bill. These contracts entitled Myers and Sanford to certain renewal commissions computed as a percentage of premiums received by Empire on certain policies sold by Myers and Sanford. It is undisputed that Protective was not a party to these contracts, nor were they assigned to Protective. Myers and Sanford claim nevertheless that their right to renewal commissions under them is a `vested property right.' The apparent thrust of respondents' argument is that it was wrongful for the Receiver to assign the Empire policies to Protective in a Treaty which cuts off Protective's liability for renewal commissions. The Court concludes that respondents' claim is wholly unmeritorious and is due to be rejected on at least six separate and independent grounds. The Court further concludes that Protective is entitled to judgment as a matter of law.
"1. Both Myers and Sanford are barred from raising such claims in this proceeding by the prior judgments of this Court, final and binding in all respects as to them. Protective, Myers and Sanford were all parties to the protracted adversary proceeding that culminated in this Court's approval of the reinsurance Treaty by order dated June 14, 1974. At a twelve-day trial prior to that order, this Court heard all claims advanced by either Myers or Sanford in opposition to approval of the reinsurance Treaty. If it is Myers' and Sanford's claim that it was wrongful for the Empire Receiver to transfer to Protective rights to the entire premiums from policies sold by Myers and Sanford because they had `vested property rights' to a part of these premiums, they could and should have raised this claim at that trial. All claims of Myers and Sanford that were raised or could have been raised are merged in the June 14, 1974 judgment, and that judgment conclusively bars the litigation of the claims made by Myers and Sanford in opposition to Protective's motion for summary judgment, which claims were decidedly germane to the central issue of the 1974 trial — whether the Treaty should be approved.
"2. At a second adversary proceeding on the claims by Myers and Sanford against the receivership estate, they argued explicitly that their right to renewal commissions under their contracts with Empire was a `property' right which could not be limited in receivership proceedings. This Court specifically rejected that argument and ordered that `all rights [of Myers and Sanford] to renewal commissions . . . terminated on June 14, 1974 under the provisions of Title 28A, Section 645, Code of Alabama.' This order was an appealable order under Title 28A, § 638, but Myers and Sanford did not appeal the order. This specific adjudication is binding on Myers and Sanford and bars them from asserting that Protective, as Empire's successor, is liable for renewal commissions which this Court has determined terminated on June 14, 1974, long before the reinsurance treaty was consummated.
"3. Apart from res judicata and related doctrines, the Court rejects the claims of *Page 776 
Myers and Sanford and concludes that Protective is entitled to judgment on the merits. Respondents' contentions run headlong into the provisions of Act No. 1040 passed in the 1975 Alabama legislative session. This Act specifically provides that
 "`With the exception of costs of administration of . . . receiverships, recorded tax liens and judgments obtained prior to initiation of delinquency proceedings, and secured creditors claims, no claim of a creditor shall be preferred over that of a policyholder of the insurer in receivership. . . . This act shall apply to all policyholders of insurers in receivership on the effective date of this act and to all future receiverships.'
"In this case, the cash values of policyholders accepting Protective's reinsurance have been subjected to a 50% moratorium, which means that for an indefinite period of time the policyholders can withdraw no more than 50% of their cash values. According to Myers' and Sanford's contentions, they, and presumably other agents similarly situated, should be entitled to 100% of their contractual renewal commissions. Moreover, Myers and Sanford seek to siphon off part of the income which the Treaty provides will be applied to reduction of the moratorium amount thus further subordinating the policyholders to agents.
"As a result, if this Court were to accept the contentions of Myers and Sanford, agents of Empire would be exalted over all other unsecured creditors and paid 100% of their claims, while policyholders would be entitled to only 50% of their cash values and their moratorium reduction would be measurably forestalled. Such subordination of the interests of policyholders to agents is contrary to both the substantive provisions of and public policy expressed in Act 1040.
"4. Apart from Act No. 1040, Myers' and Sanford's claims are completely without merit. The claims are necessarily based on the provisions of their former contracts with Empire. Protective was not a party to either of these contracts, nor were they assigned to Protective pursuant to the Treaty. Thus, Myers' and Sanford's position at best is that these contracts created `vested property rights' to future renewal commissions which somehow were `wrongfully' transferred to Protective.
"There is absolutely no provision in either the Myers or Sanford contract which indicates even in the slightest that a part of each premium was to be the `property' of Myers or Sanford upon its receipt by Empire. There is no provision whatsoever for segregating a part of the premiums or keeping renewal commissions in a separate account. Rather, the contracts created simple contractual obligations of Empire to the agents to pay renewal commissions in accordance with schedules attached to the contracts. It is quite simply impossible to reach any other conclusion.
"5. If it is assumed arguendo that as between Empire and Myers and Sanford, the agents had a property interest in that part of each premium received equal to the renewal commission, it is nevertheless impossible to conclude that Protective, which receives the premiums by virtue of its Treaty, must pay renewal commissions to the agents. There is no dispute that under the Treaty by which Protective agreed to reinsure Empire's policies, it explicitly insulated itself from all liability claimed by Myers and Sanford.
"The only theory which Myers and Sanford can conceivably offer for recovery of the renewal commissions is that Protective is a constructive trustee of them. A constructive trust arises when someone through some unjust, unconscionable or unlawful means acquires legal title to property which equitably belongs to another. Ex Parte Morton, 261 Ala. 581,75 So.2d 500 (1954); Knowles v. Canant, 255 Ala. 331, 51 So.2d 355
(1951). As already demonstrated, however, no part of the premiums collected by Protective are Myers' and Sanford's `property.' But even if Myers and Sanford did have a `property right' to renewal commissions under their contracts with Empire, in no sense could it be said that Protective unjustly or wrongfully acquired this `property right' to the Empire premiums. Pursuant to a public solicitation, Protective *Page 777 
submitted its Treaty to this Court. In clear and unambiguous language, Protective stated that it assumed no liability to any agent for renewal commissions (with certain exceptions not relevant here). Rather, the Treaty provided that a $2,000,000 fund would be left with the Receiver to pay all claims not covered by the Treaty. Following twelve days of trial on this Treaty — including its explicit provisions limiting Protective's liability to all agents — the Treaty was approved by this Court. If the Treaty, which cuts off all liability of Protective to Myers and Sanford, is somehow unjust with respect to them, their recourse was to appeal this Court's judgment to the Alabama Supreme Court, which they did but which appeal was dismissed. Accordingly, no valid argument can be made that alleged `property' which was acquired pursuant to a judicially approved contract was wrongfully acquired or acquired by means which would give rise to a constructive trust.
"Finally, a constructive trust is a remedy to promote equity, and under no concept of equity would it be appropriate to establish a constructive trust which would vault agents into the status of preferred creditors receiving 100% of their claims, when policyholders have had their rights to cash values cut by 50%, and when so preferring the agents would result in a slower reduction of the moratorium imposed on policyholder cash values.
"6. The provisions of Tit. 28A, § 645 provide an additional basis for declaring that Protective has no liability to Myers and Sanford for renewal commissions. Under the provisions of this section, as this Court has previously held, Myers' and Sanford's entitlement to renewal commissions terminated on June 14, 1974. Certainly if Myers' and Sanford's rights to renewal commissions have been terminated as to Empire, they have been terminated as to Protective, who Myers and Sanford must claim is Empire's successor in interest. Moreover, even apart from § 645, a valid order of liquidation automatically terminates all future contract obligations of the liquidating company. Laytonv. Illinois Life Ins. Co., 81 F.2d 600 (7th Cir. 1936). Thus, under both statutory and decisional law, Myers' and Sanford's contracts with Empire terminated on June 14, 1974 and create no basis for recovery against Protective.* *Page 778 
"Accordingly, on each of the above stated grounds, this Court concludes that there is no genuine issue as to any material fact and that Protective is entitled to judgment and the following declaration of its rights as a matter of law:
"1. Protective has no liability whatsoever to either Myers or Sanford for payment of any renewal commissions, past, present or future, or an amount equal to any renewal commissions by virtue of its reinsurance and assumption of Empire policies or on any other ground;
"2. The sole right of Myers and Sanford to recover renewal commissions allegedly due them is through the claim procedure established for all Empire creditors by this Court.
"Respondents' Motion to Dismiss is overruled. The Receiver's Motion to Dismiss is granted, without prejudice.
"The costs of this proceeding shall be taxed to Myers and Sanford.
"DONE this 1st day of March, 1976.
 /s/ W.C. Barber
William C. Barber Circuit Judge"
The only issue before us is whether the trial court correctly granted Protective's motion for summary judgment. We conclude that it did.
The trial court ruled adversely to the appellants by its order of June 14, 1974, in which it approved the Protective Treaty of Assumption and Bulk Reinsurance. The appellants filed a motion seeking to have the trial court set aside that judgment, which was overruled on November 22, 1974. Thereafter, Myers and Sanford appealed to this court from the June 14th order, but that appeal was dismissed by this court on September 23, 1975, when the appellants, after notice to do so, failed to file in this court a transcript of the proceedings had in the trial court.
On March 26, 1975, the Receiver filed a petition seeking the trial court's approval of an "Agreement to Effectuate Treaty of Assumption and Bulk Reinsurance," which agreement made certain amendments to the Protective treaty and otherwise provided for its effectuation. Myers and Sanford made extensive objections to the treaty, including their claim that the treaty inequitably preferred policyholders over creditors of Empire. The trial court found that all rights of Myers and Sanford to renewal commissions were terminated on June 14, 1974, and ordered the Receiver to pay accrued commissions to that date. The trial court, by its order of June 13, 1975, expressly denied claims for commissions on renewal premiums as contended for by Myers and Sanford in that proceeding. Neither Myers nor Sanford appealed from that judgment of the trial court, although an appeal from such order is authorized by Title 28A, § 638, Code.
We think the trial court correctly concluded that Protective was entitled to summary judgment. The affidavits and exhibits filed by Protective in support of its motion set out all of the proceedings which had previously been before the trial court involving the same matter raised by Protective's bill for declaratory judgment. Myers and Sanford failed to file any counter-affidavit. These exhibits clearly show that the matter of renewal commissions after June 14, 1974, had been litigated in at least two separate proceedings in which Protective and Myers and Sanford were at all times parties. Myers and Sanford failed to perfect an appeal from either order entered in those proceedings. Therefore, the trial court correctly held that Protective was entitled to summary judgment as a matter of law.Weiss v. U.S., C.A.2d 1955, 227 F.2d 72, certiorari denied350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817; Morey v. Wellford, C.A. 1944, 78 U.S.App.D.C. 387, 141 F.2d 282. The rule is stated thusly in Wright Miller, Federal Practice and Procedure: Civil § 2735:
 "A party may move for summary judgment on the ground that another action already has adjudicated the disputed claim on the merits and therefore it should not be relitigated because of res judicata, or that the earlier litigation actually determined an issue crucial to both *Page 779 
actions so that an application of collateral estoppel entitles the movant to a judgment as a matter of law in this second action. Indeed, a Rule 56 motion often is the most appropriate vehicle for determining the validity of a defense of former adjudication.
 ". . . When the claim being litigated was or could have been raised in an earlier action on the same cause of action between the same litigants, a summary judgment based on the defense of res judicata precludes the suit through the application of either the principle of `merger' or of `bar.' . . ."
The judgment appealed from is, therefore, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur.
* "The sole authority relied on by Myers and Sanford to sustain their position is General American Life Ins. Co. v. Roach, 179 Okla. 301, 65 P.2d 458 (1937). Roach
held that under the terms of the specific agency contract then under consideration, the agent possessed a vested property right to renewal commissions which could not be abrogated by the assignee of the contract. Roach has been specifically rejected in Palmer v. Peoria Life Ins. Co., 376 Ill. 517, 34 N.E.2d 829 (1941). The North Carolina Supreme Court expressly refused to follow Roach in Security National Bank v. Educators Mut. Life Ins. Co., 265 N.C. 86, 143 N.E.2d 270 (1965), and the underlying rationale of the decision — that agents may have an indefeasible property right in renewal commissions — has been rejected time and again. See Liberty National Insurance Co. v. Reinsurance Agency, Inc., 307 F.2d 164 (9th Cir. 1962); Layton v. Illinois Life Ins. Co., 81 F.2d 600 (7th Cir. 1936). In any event Roach has no application to this case. First, the contract under review there made `elaborate provision' for keeping the agents' renewal commissions `separate' from the company's share of each premium, and the company reserved a `lien' upon `moneys' in its possession to secure any indebtedness of the agent to the company thereby, according to Roach, indicating that the agent's right to renewal commissions was a `property' right. In neither the Myers nor Sanford contract is there any provision suggesting separate accounts or the right of Empire to a lien. Second, in Roach the reinsuring company was specifically assigned the agent's contract, not the case here. Third, the assignment of policies to Protective and Protective's disclaimer of liability were expressly approved by the receivership court, which does not appear to be the case in Roach. Fourth, it does not appear in Roach that a decree in favor of the plaintiff-agent would result in inequity to the policyholders by subordinating their interests to that of agents or lengthening the reduction of a moratorium imposed by the reinsurance. Fifth, in Roach the reinsuring company took all of the ceding company's assets, whereas here, $2,000,000 was left with the Receiver to pay the claims of creditors such as Myers and Sanford. Sixth, in Act No. 1040, the legislature of Alabama has clearly promulgated the public policy of this State of preferring policyholders over all other non-secured creditors which public policy would be abrogated by any ruling which resulted in subordinating policyholders to agents; no such public policy was acknowledged in Roach.